IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALEX KISLOV and NIKO HEARN, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>)<br>) |
| *Plaintiffs*, | ) No. 17-cv-9080<br>) |
| v. | ) Hon. Rebecca R. Pallmeyer<br>) |
| AMERICAN AIRLINES, INC., a Delaware corporation, | ) Magistrate Judge Sheila Finnegan<br>)<br>) |
| *Defendant*. | ) |

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Alex Kislov and Niko Hearn (collectively "Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this Third Amended Class Action Complaint against Defendant American Airlines, Inc. ("Defendant" or "American Airlines") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege as follows based on personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

**INTRODUCTION**

1.  Plaintiffs allege that Defendant violated BIPA by collecting, possessing, and disclosing their voiceprint biometric identifiers without complying with BIPA's mandates.

2.  Plaintiffs seek to represent other individuals who, like them, have had their biometric identifiers or biometric information collected by Defendant without regard for BIPA's protections. Plaintiffs made one or more phone calls to American Airlines' customer service hotline while it used automated interactive customer software that relies on voice biometric

1

analysis, and as a result, had their unique, biometric voiceprints collected, stored, and disclosed without their consent or authorization.

3. On behalf of themselves and the proposed Class defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class, together with costs and reasonable attorneys' fees.

## PARTIES

4. At all relevant times, Plaintiffs Alex Kislov and Niko Hearn have been residents and citizens of the state of Illinois.

5. At all relevant times, Defendant American Airlines, Inc., has been a Delaware corporation registered with and authorized by the Illinois Secretary of State to transact business in Illinois. Defendant transacts significant business in this District, and O'Hare International Airport located in Chicago, Illinois is Defendant's regional hub for the Midwest.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

7. This Court may assert personal jurisdiction over Defendant, because Defendant does business within Illinois and transacts business in Illinois such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiffs' claims arise out of Defendant's in-state actions.

8. Venue is proper in this District because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## THE BIOMETRIC INFORMATION PRIVACY ACT

9. "Biometrics" refers to "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

10. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

11. As set forth in BIPA, biologically unique identifiers, such as a person's unique voiceprint, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

12. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including voiceprints.

13. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of Biometric Data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

14. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, and hand geometry. "Biometric identifiers" are

3

physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

15. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

16. In BIPA, the Illinois General Assembly identified distinct activities that may subject private entities to liability, including:

   a. possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

   b. collecting biometrics, 740 ILCS 14/15(b); and

   c. disclosing biometrics, 740 ILCS 14/15(d).

17. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

18. BIPA requires any private entity in possession of biometrics to create a written policy, made available to the public, explaining its biometric retention and destruction practices. 740 ILCS 14/15(a).

19. BIPA imposes three requirements that must be satisfied before any private entity

may "collect, capture . . . or otherwise obtain" an individual's biometrics:

    a.    First, the private entity must inform the individual in writing that the individual's biometric information is being collected or stored. 740 ILCS 14/15(b)(1);

    b.    Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2);

    c.    Finally, the private entity must receive a written release executed by the individual or a legally authorized representative. 740 ILCS 14/15(b)(3).

20.    BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10.

21.    BIPA also prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d).

## FACTUAL BACKGROUND

22.    Defendant is a leader in the airline industry, operating a global fleet of aircraft making thousands of flights around the world per day, including flights to and from airports located in Illinois.

23.    Defendant operates a 24-hour customer service hotline to assist its customers and respond to customer questions, issues, and complaints.

5

24. In or about July 2011, in an effort to better achieve customer service goals and reduce call agent volumes, Defendant integrated "Interactive Voice Response" ("IVR") software into its customer support hotline.

25. IVR is the robot voice that a caller hears when calling a customer support hotline. Defendant utilizes a cloud-based IVR that differs from traditional IVR in two ways: first, unlike traditional IVRs, Defendant's IVR software saves all of the data obtained during the phone call in a cloud based server instead of onsite servers located at a call center or business; second, and more critically, Defendant's cloud-based IVR software collects and analyzes callers' actual voiceprints to understand the caller's request and to automatically respond with a personalized response instead of simply providing menus of options from which the caller can press a number to select what they wish to accomplish.

26. In fact, Defendant's IVR software vendor has stated, in a public case study promoting its relationship with Defendant, that the specific software used by Defendant involves "conversational speech recognition, natural language call steering, **voice biometrics**, outbound notifications, CTI, ACD, and so much more."

27. By collecting and storing individuals' unique voiceprints, Defendant's IVR software allows it to trace every contact point where a *specific* individual interacts with it. Thus, for example, when a caller contacts the customer service hotline, the IVR software can extract the voiceprint of the caller to (1) track the interaction, and (2) identify whether that individual has previously interacted with the company and through which means of contact the interaction occurred.

28. While thousands of individuals throughout Illinois have interacted with Defendant's IVR software, Defendant has failed to implement any sort of uniform policy to ensure

that it obtains written consent from individuals interacting with its IVR software before obtaining their voiceprint biometrics.

29. When a caller calls Defendant's customer service hotline they are greeted with an automated voice that asks the customer what they are calling about instead of simply presenting a predetermined set of options.

30. To provide this "personalized" interactive voice experience to callers, Defendant's IVR software collects and analyzes the caller's voiceprint so that it can determine the caller's intent.

31. Not only does Defendant's IVR software collect and analyze callers' voiceprints so that it can interact with them and understand, or even predict, their requests, but it also stores the biometric data obtained so that it could be provided to a customer service agent if the caller is eventually transferred or for future interactions with a particular caller.

32. Defendant's IVR proactively uses information about callers and their trips to anticipate the reason for the call, personalize the experience, and shorten hold times.

33. Like thousands of other Illinois residents, Plaintiffs interacted with Defendant's IVR software and had their voiceprint biometrics collected when they called Defendant's automated customer service phone line.

34. Plaintiff Kislov called Defendant's customer service hotline in December 2019, from within the state of Illinois. Upon his phone call, Plaintiff was greeted by a recording which stated that the audio may be recorded for quality assurances, followed by an automated voice generated by Defendant's IVR software asking how it could assist him. While he vocally interacted with Defendant's IVR software, it captured and stored the unique biometric signatures of his voice, *i.e* his voiceprint.

7

35. Plaintiff Hearn has called Defendant's customer service hotline multiple times from within the state of Illinois since December 2020, in which he vocally interacted first with Defendant's IVR software, and subsequently with Defendant's customer service representatives, to resolve several issues pertaining to flights departing from Illinois. While Plaintiff Hearn vocally interacted with Defendant's IVR software, it captured and stored the unique biometric signatures of his voice, *i.e* his voiceprint.

36. At no point in time were Plaintiffs made aware that Defendant's IVR software collects and leverages the voice biometrics of those individuals who interact with it.

37. As with thousands of other putative class members, from the moment that Plaintiffs interacted and spoke to Defendant's IVR, their unique voiceprints were obtained in order to analyze the intent and determine the context of Plaintiffs' calls, prepare information to be passed on to a customer service representative as needed, and to allow Defendant to review the phone call to determine whether there were any issues, errors, or misunderstandings made by Defendant's IVR.

38. However, at no point in time either before Plaintiffs' calls or during their calls did Defendant disclose that its IVR software was collecting, analyzing, and storing their unique individual voiceprints. Defendant has come into possession of Plaintiffs' voice biometrics, as well as the voice biometrics of thousands of other Illinois residents, but has failed to establish a publicly-available biometric retention and destruction policy as required by law.

39. In addition, Defendant failed to obtain Plaintiffs' and other individuals' informed written consent to collect, capture, or store their voice biometrics.

40. Further, Defendant disclosed or otherwise disseminated Plaintiffs' voice biometrics to the vendor of its IVR software for cloud storage purposes, without notifying Plaintiffs or obtaining Plaintiffs' consent to do so.

41. To this day, Plaintiffs do not know the status of the voiceprint biometrics Defendant obtained from them through its IVR software.

## CLASS ALLEGATIONS

42. Plaintiffs bring this action on behalf of themselves and similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class defined as follows:

> All individuals whose biometric identifiers and/or biometric information were captured, collected, obtained, stored, or used by Defendant within the state of Illinois any time within the applicable limitations period.

43. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family of such officer or director.

44. There are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiffs, the members can be easily identified through Defendant's records.

45. Plaintiffs' claims are typical of the claims of the Class they seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the Class.

46. There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

   a. Whether Defendant collects, captures, or otherwise obtains individuals' biometric identifiers or biometric information;

   b. Whether Defendant made publicly available any written policy establishing biometric retention or destruction guidelines;

   c. Whether Defendant disseminated Plaintiffs' and other Class members' biometrics to third parties without their consent;

   d. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

   e. Whether Defendant's conduct violates BIPA;

   f. Whether Defendant's BIPA violations are willful or reckless; and

   g. Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

47. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

48. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

49. Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

### COUNT I
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
### (On behalf of Plaintiffs and the Class)

50. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

51. Defendant American Airlines is a private entity under BIPA.

52. As discussed above, Plaintiffs and other Class members have had their "biometric identifiers," namely their voiceprints, collected and stored, and thus possessed, by Defendant as a result of interacting with Defendant's IVR software.

53. Section 15(a) of BIPA requires any entity in possession of biometric identifiers or biometric information to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

54. Though Defendant has come into possession of Plaintiffs' and other Class members' voiceprint biometric identifiers, it has failed to make publicly available any policy addressing its biometric retention and destruction practices.

11

55. As a result, Defendant has violated Section 15(a) of BIPA.

56. Defendant knew, or was reckless in not knowing, that the IVR software that it used, and which thousands of Illinois residents interacted with, would be subject to Section 15(a) of BIPA, a statutory provision passed in 2008, yet failed to comply with the statute.

57. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

58. Defendant's violations of Section 15(a) of BIPA, which has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(a) of BIPA.

59. Accordingly, with respect to Count I, Plaintiffs, individually and on behalf of the proposed Class, pray for the relief set forth below.

## COUNT II
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### (On behalf of Plaintiffs and the Class)

60. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

61. Defendant American Airlines is a private entity under BIPA.

62. As discussed above, Plaintiffs and other Class members have had their "biometric identifiers," namely their voiceprints, collected, captured, and stored by Defendant as a result of interacting with Defendant's IVR software

63. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric identifiers or biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless

[the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

64. Each instance when Plaintiffs and the other Class members interacted with Defendant's IVR software, Defendant captured, collected or otherwise obtained Plaintiffs' and the other Class members' voiceprint biometric identifiers without their written consent and without complying with and, thus, in violation of BIPA.

65. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

   a. Defendant failed to inform Plaintiffs and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

   b. Defendant failed to inform Plaintiffs and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

   c. Defendant failed to inform Plaintiffs and the Class in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2); and

   d. Defendant failed to obtain a written release from Plaintiffs and other Class members, as required by 740 ILCS 14/15(b)(3).

66. As a result, Defendant has violated Section 15(b) of BIPA.

67. Defendant knew, or was reckless in not knowing, that the IVR software that it used, and which thousands of Illinois residents interacted with, would be subject to the provisions of Section 15(b) of BIPA, a statutory provision in effect since 2008, yet failed to comply with the statute.

68. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

69. Defendant's violations of Section 15(b) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA.

70. Accordingly, with respect to Count II, Plaintiffs, individually and on behalf of the proposed Class, pray for the relief set forth below.

### COUNT III
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)
### (On behalf of Plaintiffs and the Class)

71. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

72. Defendant American Airlines is a private entity under BIPA.

73. As discussed above, Plaintiffs and other Class members have had their "biometric identifiers," namely their voiceprints, collected and stored, and thus possessed, by Defendant as a result of interacting with Defendant's IVR software.

74. Section 15(d) of BIPA prohibits any private entity in possession of biometrics, such as Defendant, from disclosing, redisclosing, or otherwise disseminating an individual's biometric identifiers or biometric information without that individual's consent. 740 ILCS 14/15(d).

14

75. As alleged herein, after collecting Plaintiffs' and other Class members' biometric identifiers through its IVR software, Defendant disclosed or otherwise disseminated their biometrics to its third-party software provider for cloud storage purposes.

76. Defendant never obtained Plaintiffs' or other Class members' consent to disclose or disseminate their biometrics to its third-party IVR software provider.

77. Accordingly, Defendant has violated Section 15(d) of BIPA.

78. Defendant knew, or was reckless in not knowing, that its biometric dissemination practices would be subject to the provisions of Section 15(d) of BIPA, a statutory provision in effect since 2008, yet failed to comply with the statute.

79. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

80. Defendant's violations of Section 15(d) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA.

81. Accordingly, with respect to Count III, Plaintiffs, individually and on behalf of the proposed Class, pray for the relief set forth below

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

    a. Certifying the Class as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

    b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

    c.   Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA;

    d.   Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

    e.   Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

    f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

    g.   Awarding pre- and post-judgment interest, as allowable by law; and

    h.   Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: June 2, 2021

Respectfully submitted,

ALEX KISLOV and NIKO HEARN, individually and on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiffs' Attorneys*

Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcpc.com

*Counsel for Plaintiffs and the Putative Class*