IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALEX KISLOV and NIKO HEARN, individually and on behalf of similarly situated individuals, | ) ) ) ) |
| *Plaintiffs*, | ) No. 17-cv-9080 ) |
| v. | ) Hon. Rebecca R. Pallmeyer ) |
| AMERICAN AIRLINES, INC., a Delaware corporation, | ) Magistrate Hon. Sheila Finnegan ) ) |
| *Defendant.* | ) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Alex Kislov and Niko Hearn, by their undersigned counsel, hereby respond to Defendant American Airlines, Inc.'s Motion to Dismiss (Dkts. 95-96) as follows:

**I.     INTRODUCTION**

This case presents a straightforward application of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Defendant American Airlines, Inc. ("Defendant") is one of the nation's largest commercial airlines, and in 2011 implemented "Interactive Voice Response" ("IVR") software into its general customer support hotline. Unbeknownst to consumers who connect with that hotline, Defendant's IVR software analyzes callers' voiceprint data in order to identify whether a certain caller has previously interacted with Defendant or even predict their reason for calling.

Recognizing the serious need for protections for Illinoisans' sensitive biometric data, the Illinois Legislature passed BIPA in 2008. Indeed, one of BIPA's express legislative purposes was to address the fear that "major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites" for new applications of biometric technology. 740 ILCS

1

14/5(b). Under BIPA's protections, a "private entity" – defined as any individual, partnership, corporation, limited liability company, association, or other group, however organized – is prohibited from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's unique biometric identifiers, which are expressly defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."

On June 2, 2021, Plaintiffs Alex Kislov and Niko Hearn ("Plaintiffs") filed a Third Amended Complaint (Dkt. 93, "Complaint") in this matter, asserting claims under Sections 15(a), (b), and (d) of BIPA, and alleging that Defendant unlawfully collected, possessed, and disseminated their biometric voice data when they called Defendant's hotline within the last two years. Their Section 15(a) claims were subsequently severed and remanded to state court for lack of Article III standing. (Dkts. 106, 107). Defendant has moved to dismiss their remaining Section 15(b) and Section 15(d) claims under Fed. R. Civ. 12(b)(6), contending that their claims are preempted by the federal Airline Deregulation Act ("ADA"). (Memorandum in Support of Motion to Dismiss, Dkt. 96, "Motion" or "Mot.").

Defendant's Motion should be denied for two reasons. First, Plaintiffs' BIPA claims arising from Defendant's surreptitious collection of their irreplaceable voice biometrics are not sufficiently related to any bargained-for airline "service" to be preempted. Second, even if Plaintiffs' claims had the requisite connection with a "service" under the ADA, Defendant has failed to show how BIPA compliance would have a significant economic impact, which is required to establish ADA preemption in this Circuit. At minimum, the Court should defer ruling on Defendant's preemption argument until a factual record is established with respect to the economic effects BIPA compliance would have on Defendant's services.

2

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

Defendant implemented IVR software into its general purpose consumer hotline in July 2011 (Compl. ¶ 24). Defendant's IVR software saves all of the data obtained during the phone call in a cloud based server instead of onsite servers located at a call center or business; second, and more critically, Defendant's cloud-based IVR software collects and analyzes callers' actual voiceprints to understand the caller's request and to automatically respond with a personalized response instead of simply providing menus of options from which the caller can press a number to select what they wish to accomplish. (Compl. ¶ 25). Thus, Defendant's IVR software allows it to trace every contact point where a specific individual interacts with it. (Compl. ¶ 27). Crucially, Defendant's IVR does not only obtain biometric data from individuals who have purchased flights or other core airline services; it secretly obtains analyzes voiceprint data from ever caller, regardless of their purpose for calling. (*See* Compl. ¶¶ 29-33).

In December 2019, Plaintiff Kislov called Defendant's customer support hotline in December 2019, from within the state of Illinois. (Compl. ¶ 34). Plaintiff Hearn called Defendant's customer support hotline multiple times from within the state of Illinois since December 2020. (Compl. ¶ 35). Unbeknownst to Plaintiffs at the time, when they called Defendant's customer support hotline, the IVR software collected and leveraged their biometrics (Compl. ¶ 36). Plaintiffs did not realize this at the time because Defendant failed to inform them, in writing or otherwise, that its IVR software collects and stores callers' voiceprint data. (Compl. ¶ 38). Defendant did not obtain Plaintiffs' consent to collect their unique biometric identifiers, or disclose to them Defendant's purpose for obtaining biometrics or the length of term for which their biometrics would be stored. (Compl. ¶ 65). In addition, Defendant disseminated Plaintiffs' collected biometrics to the vendor from whom it obtained the IVR software, without their consent. (Compl.

3

¶¶ 75-76). By failing to inform Plaintiffs that it was collecting their unique biometric identifiers, failing to inform them in writing of its purpose for collecting their unique biometric identifiers and the length of time Defendant would store them, failing to obtain Plaintiffs' consent to disseminate their biometric identifiers to the vendor of the IVR software, Defendant has violated Sections 15(b), (d), and (a) of BIPA, respectively.

### III. LEGAL STANDARD

Where a defendant moves to dismiss a complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiffs' claims; rather it "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

### IV. ARGUMENT

Congress enacted the ADA in order to "encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quantity, variety, and price of air services, and for other purposes." 49 U.S.C. § 1301. In *Morales v. Trans World Airlines, Inc*, the Supreme Court held that the ADA preempts "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services,'" 504 U.S. 374, 384 (1992), but

4

acknowledged that in many cases such a connection may be "too tenuous, remote, or peripheral a manner to have pre-emptive effect." 504 U.S. 374, 384, 390 (1992).

In the Seventh Circuit, to be preempted by the ADA, a state law must "relate[] to airline rates, routes, or services, either ***by expressly referring to them*** or by having a ***significant economic effec***t upon them." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (emphasis added) (hereinafter "*Travel All Over the World*"). Indisputably, "BIPA does not expressly refer in any way, shape, or form to airline-related services." *Nseumen v. DAL Global Servs., Inc.*, No. 21-cv-2630, 2021 WL 4728707, at *2 (N.D. Ill. Oct. 11, 2021). Therefore, in order to be preempted, Plaintiffs' BIPA claims here must have a "significant economic impact" on a "service" covered by the ADA. In analyzing ADA preemption, "the court must consider the particular facts of the case and determine whether the claims 'relate to' airline rates, routes, or services*.*" *Hirst v. Skywest, Inc.*, No. 15-cv-02036, 2016 WL 2986978, at *12 (N.D. Ill. May 24, 2016) (citing *Travel All Over the World*, 73 F.3d at 1433).

Here, Plaintiffs' claims do not arise from or depend on an airline "service" under the ADA. Moreover, even if they did, Defendant's Motion completely avoids any discussion of what economic impact – let alone "significant" economic impact – BIPA compliance would have on its services. Because Plaintiffs' BIPA claims regarding Defendant's surreptitious collection of their biometric data hotline (1) do not arise from Defendant's bargained-for services, and (2) Defendant does not, and cannot, establish that BIPA's requirements would have any economic effect on its bargained-for services, Defendant's Motion should be denied.

      A.      **Plaintiffs' BIPA Claims Arise From Defendant's Decision To Implement Biometric IVR Technology, Not From Any "Service" Covered By The ADA.**

In *Travel All Over the World*, the Seventh Circuit articulated its interpretation of "services" under the ADA: "'Services' generally represent a ***bargained-for*** or ***anticipated provision*** of labor

5

from one party to another . . . [This] leads to a concern with the contractual arrangement between the airline and the user of the service." 73 F.3d at 1433 (emphasis added). Here, Plaintiffs' claims regarding undisclosed biometric collection have no connection with any bargained-for service provided by Defendant, "such as ticketing, boarding procedures, provision of food and drink, and baggage handling, [or] the transportation itself." *Id.* at 1433. Rather, their claims arise solely from Defendant's unlawful collection of their voice biometrics through intrusive IVR technology (Compl. ¶¶ 30-40, 52, 62). The factual underpinnings of Plaintiffs' BIPA claims – such as Defendant's failure to disclose that its IVR technology collects and relies on any callers' biometrics, and failure to obtain callers' consent to before disclosing their biometric data to the vendor of its IVR technology (Comp. ¶ 38) – only relate to the IVR technology, and have nothing whatsoever to do with flights, airfares, or transportation. In fact, Plaintiffs would have the exact same BIPA claims arising from the undisclosed collection of their biometrics no matter whether they accidentally misdialed Defendant's public hotline or called the hotline with the intent to purchase a ticket. Put differently, Plaintiffs' claims only "refer to" and have a connection with the IVR technology, which is clearly not a "*bargained-for* aspect[] of airline operations over which carriers compete." *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2019 WL 9091763, at *4 (S.D. Fla. July 9, 2019) (emphasis in original). Indeed, it is difficult to comprehend how Defendant's biometric practices could qualify as a "bargained-for" component of Defendant's services if Defendant does not even alert callers that it collects their biometrics in the first place.

Realizing that it must attempt to tie Plaintiffs' claims to an actual airline service in order for its preemption argument to succeed, Defendant mischaracterizes Plaintiffs' BIPA claims as challenging Defendant's "customer service" practices generally. (Mot. at 5). Defendant's description misses the mark. For example, there is no allegation in the Complaint that Plaintiff

6

Kislov called Defendant's hotline regarding a customer service request, illustrating exactly why his BIPA claims have no connect with Defendant's "customer services." The factual predicates for his claims are Defendant's undisclosed, unauthorized collection and use of his voice biometrics, and those facts would exist regardless of whether Defendant were an international airline or a clothing retailer. Accordingly, any relationship Plaintiffs' claims share with Defendant's services is too tenuous or remote to be preempted.

### B. Defendant Fails To Establish Any Economic Impact BIPA Compliance Would Have On Its Services.

Even if Plaintiffs' claims did have a sufficient connection with one of Defendant's bargained-for services, Defendant would be required to "establish that BIPA's requirements have some economic impact" on that service. *Abudayyeh v. Envoy Air Inc.*, No. 20-cv-000142, 2021 WL 3367173, at *11 (N.D. Ill. Aug. 3, 2021) (Wood, J.) (denying motion to dismiss premised on ADA preemption); *Travel All Over the World*, 73 F.3d at 1433 (analyzing whether claims "have [a] forbidden significant economic effect").

Recently, and in the context of BIPA, Judge Kennelly analyzed a defendant's argument that a plaintiff's BIPA claims were preempted by the Federal Aviation Administration Authorization Act (FAAAA), which borrows language from the ADA's preemption clause. *Rogers v. BNSF Ry. Co.*, No. 19-cv-3083, 2019 WL 5635180, at *3 (N.D. Ill. Oct. 31, 2019). Judge Kennelly explained that the BIPA claims in that case were not preempted by the FAAA because BIPA's impact on motor carriers' "rates, routes, or services" was "too tenuous, remote, or peripheral," in part because the defendant had failed to show that subjecting it to BIPA's requirements would force it to alter its services. *Id.* And earlier this month Judge Kennelly rejected an argument that BIPA was preempted by the ADA. *Nseuman*, No. 21-cv-02630, 2021 WL 4728707, at *2 (N.D. Ill. Oct. 11, 2021). In *Nseuman*, Judge Kennelly rejected the defendant

7

baggage handler's preemption argument because the handler failed to show that BIPA's requirements would have a substantial impact on its services. *Id.*

Here, as in *Abudayyeh*, *Rogers*, and *Nseuman*, Defendant has failed to demonstrate that requiring it to comply with BIPA would have a significant economic impact on its services. Instead, Defendant relies on out of Circuit authority to essentially argue that any state law requiring it to make any change in its business would be preempted. That is not the law in this Circuit. *See Midwest Trading Grp., Inc. v. GlobalTranz Enterprises, Inc.*, 59 F. Supp. 3d 887, 898 (N.D. Ill. 2014) (Durkin, J.) ("[T]he Seventh Circuit has explicitly rejected the claim that any state law that increases the cost of doing business is preempted"). Relatedly, and tellingly, the decisions Defendant cites in support of its position that claims involving "customer related data" are generally preempted by the ADA are all from jurisdictions that do not subscribe to the Seventh Circuit's test set forth in *Travel All the World*, which requires generally applicable laws such as BIPA to have a "significant economic effect" on an airline service in order to be preempted. 73 F.3d at 1432.

Moreover, Defendant's professed fears about the impossibility of BIPA compliance appear overblown. *See King v. PeopleNet Corporation*, No. 21-cv-2774, 2021 WL 5006692, at *9 (N.D. Ill. Oct. 28, 2021) (Shah, J.) ("A [BIPA] waiver imposes a minor compliance cost"). Disabling the biometric component of its IVR technology except with respect to individuals to whom Defendant has provided written disclosures about its collection and disclosure practices under 740 ILCS 14/15(b) and 740 ILCS 14/15(d) should be a simple step with little to no economic impact on its business, where it interacts with consumers in writing on a daily basis in the form of tickets, boarding passes, and a host of other communications. Regardless, in light of Defendant's failure to address economic effects in its Motion, the degree to which BIPA's requirements would impose

8

economic costs on Defendant is an unresolved factual issue inappropriate for determination at the motion to dismiss stage. *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017) ("Determining whether Plaintiff's claims have an impermissible effect on American's prices or services is an inherently factual question; evidence is required to determine whether and how Plaintiff's claim would have such an effect.").

In sum, Defendant's Motion to Dismiss should be denied because Plaintiffs' claims share at most a tenuous or remote link to airline services, and because Defendant fails to sufficiently demonstrate that BIPA compliance would have a significant economic impact on its services, as required under the Seventh Circuit's test set forth in *Travel All Over the World*.

### V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendant's Motion to Dismiss in its entirety.

Dated: October 29, 2021

Respectfully submitted,

ALEX KISLOV and NIKO HEARN, individually and on behalf of similarly situated individuals

By:     /s/ Timothy P. Kingsbury
*One of Plaintiffs' Attorneys*

Evan M. Meyers
Timothy P. Kingsbury
Steven R. Beckham
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
tkingsbury@mcgpc.com
sbeckham@mcgpc.com

*Counsel for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 29, 2021, I filed the foregoing *Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss* using the Court's CM/ECF Filing System, with a copy sent via electronic mail to all counsel of record.

/s/ Timothy P. Kingsbury