IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEX KISLOV and NIKO HEARN, individually and on behalf of a class of similarly situated individuals,<br><br>   Plaintiffs,<br><br>  v.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>   Defendant. | Case No. 1:17-cv-9080<br><br>Hon. Rebecca R. Pallmeyer<br><br>Magistrate Judge Hon. Sheila Finnegan |

**AMERICAN AIRLINES, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 2
      A.    Plaintiffs' Claims Relate To Customer Service, Which Is A Core "Service" Under the ADA ......................................................................... 3
      B.    Plaintiffs' Claims Would Have a Significant Impact on American's Customer Service ................................................................................... 7
CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abudayyeh v. Envoy Air, Inc.*,
  2021 WL 336173 (N.D. Ill. Aug. 3, 2021) .............................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 3

*Bower v. Egyptair Airlines Co.*,
  731 F.3d 85 (1st Cir. 2013) ..................................................................................................... 10

*Costello v. BeavEx, Inc.*,
  810 F.3d 1045 (7th Cir. 2016) ............................................................................................ 9, 12

*Delta Air Lines, Inc. v. N.Y. City Dep't of Consumer Affairs*,
  2021 WL 4582138 (E.D.N.Y. Sept. 30, 2021) ....................................................................... 10

*Donoff v. Delta Air Lines, Inc.*,
  2019 WL 9091763 (S.D. Fla. July 9, 2019) .............................................................................. 5

*Georgia Nut Co. v. C.H. Robinson Co.*,
  2017 WL 4864857 (N.D. Ill. Oct. 26, 2017) ........................................................................... 11

*Hodges v. Delta Air Lines, Inc.*,
  2010 WL 5463832 (W.D. Wash. Dec. 29, 2010) ..................................................................... 6

*In re Am. Airlines, Inc., Priv. Litig.*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005) ..................................................................................... 8

*In re JetBlue Airways Corp. Priv. Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................................. 4, 8

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .......................................................................................................... passim

*Nationwide Freight Sys., Inc. v. Ill. Com. Comm'n*,
  784 F.3d 367 (7th Cir. 2015) .................................................................................................. 11

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .......................................................................................................... 10, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nseumen v. DAL Global Services, Inc.*,
  2021 WL 4728707 (N.D. Ill. Oct. 11, 2021) ........................................................................... 12

*Pena v. British Airways, PLC (UK)*,
  2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020) .......................................................................... 5

*People ex rel. Harris v. Delta Air Lines, Inc.*,
  247 Cal. App. 4th 884 (2016) ........................................................................................... 4, 5, 9

*Pica v. Delta Air Lines, Inc.*,
  2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ..................................................................... 5, 6

*Pro. Towing & Recovery Operators of Illinois v. Box*,
  2008 WL 5211192 (N.D. Ill. Dec. 11, 2008) .......................................................................... 11

*Rogers v. BNSF Railway Co.*,
  2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) .......................................................................... 12

*Rowe v. New Hampshire Motor Transp. Ass'n*,
  552 U.S. 364, 375 (2008) .................................................................................................. 9, 10

*Shevin-Sandy v. Athletic Specialties, LLC*,
  2020 WL 4748152 (N.D. Ill. Aug. 17, 2020) ........................................................................... 3

*Supreme Auto Transport v. Arcelor Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) ..................................................................................... 3

*Tobin v. Fed. Exp. Corp.*,
  775 F.3d 448 (1st Cir. 2014) .................................................................................................... 7

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
  73 F.3d 1423 (7th Cir. 1996) ........................................................................................... passim

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
  219 F.3d 605 (7th Cir. 2000) ............................................................................................ 11, 13

*Zamber v. Am. Airlines, Inc.*,
  282 F. Supp. 3d 1289 (S.D. Fla. 2017) .................................................................................. 13

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................................... 13

**INTRODUCTION**

The Airline Deregulation Act ("ADA") preempts any state law claim "related to a . . . service of an air carrier," and thus preempts any claim that would regulate how an airline provides service to its customers. Plaintiffs' own allegations—which they simply ignore in their opposition brief ("Opp.")—establish that their BIPA claims would require American to significantly alter how it provides customer service over the phone. Specifically, Plaintiffs seek to impose Illinois state law requirements on American's use of "Interactive Voice Response" ("IVR") software that they allege has been "integrated" into American's customer service hotline and the customer data American collects from that hotline. *See* TAC ¶¶ 60-81. And these state-law requirements would be no small thing. According to Plaintiffs themselves, American would have to disable the biometric component of its IVR technology and provide written notice to, and collect a written waiver from, every Illinois resident who calls into its customer-service hotline before it could use IVR technology again. Opp. at 8. Plaintiffs' own allegations thus plainly establish that their claims "relate to" American's provision of customer services and are therefore preempted under the ADA. That conclusion is consistent with the numerous decisions considering similar privacy laws cited by American in its opening brief—which Plaintiffs fail to distinguish or even substantively address.

Plaintiffs make two primary arguments in their opposition. Plaintiffs first say that their claims exclusively concern IVR technology, which they assert is not a covered "service" under the ADA. But this argument ignores the ADA's "related to" language, which courts have repeatedly confirmed prohibits analyzing claims in a vacuum as Plaintiffs seek to do. While Plaintiffs challenge the use of IVR technology, their claims still plainly "relate to" American's provision of customer service—obviously a covered service under the ADA. After all, Plaintiffs specifically allege that IVR is an "interactive *customer* software," that American "integrated . . .

1

into its *customer support hotline*" in an effort "to *better achieve customer service goals*." See TAC ¶¶ 2, 24, 34 (emphasis added). Plaintiffs' argument that they are challenging only IVR software, and not the customer service the software facilitates, is legally mistaken as confirmed by the case law and factually contradicted by their own allegations.

Second, Plaintiffs argue that their claims evade preemption because compliance with BIPA would have an insubstantial economic impact on American's services. Here again, Plaintiffs contradict themselves. They acknowledge that state-law requirements that would "force" a carrier "to alter its services" have a sufficient impact for preemption under the ADA. Opp. at 7. And they admit that their claims would force American to alter the way it provides customer service by "[d]isabling the biometric component of its IVR technology" unless and until American provides written notices and secures written waivers from every single Illinois customer that dials in. *Id.* at 8. Plaintiffs' own arguments thus show why the ADA preempts their claims—they would have a direct and significant impact on American's customer service. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992).

In case after case, courts have found that state law privacy claims that would regulate airlines' interactions with their *customers* as Plaintiffs seek to do through their BIPA claims are preempted under the ADA. *See* MTD at 6-7. This overwhelming case law addressing analogous situations when considered in light of Plaintiffs' own allegations requires the same result here.

## ARGUMENT

Plaintiffs start their Opposition by arguing that their claims can proceed "unless it appears beyond doubt that [they are] unable to prove any set of facts which would entitle the[m]

2

to relief." Opp. at 4 (quotations omitted).[1] But the Supreme Court expressly overruled that standard more than 14 years ago in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that the "no/any set of facts" rule "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Id.* at 563. Rather, as has been the case since 2007, to survive dismissal, Plaintiffs must allege facts that, if true, would plausibly entitle them to relief. *See Shevin-Sandy v. Athletic Specialties, LLC*, 2020 WL 4748152, at *2 (N.D. Ill. Aug. 17, 2020) (Pallmeyer, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs fail to do so.

      A.      **Plaintiffs' Claims Relate To Customer Service, Which Is A Core "Service" Under the ADA**

American demonstrated in its opening brief that "customer service" is a "service" under the ADA. *See* MTD at 5-6. Plaintiffs do not seriously dispute this or address the mountain of case law standing for this obvious proposition. Instead, they argue that their BIPA claims "only relate to the IVR technology, and have nothing whatsoever to do with flights, airfares, or transportation." Opp. at 6. Plaintiffs' argument fails based on their own allegations and the case law.

While it is true that Plaintiffs' claims challenge American's alleged use of IVR technology, Plaintiffs ignore their extensive allegations that American uses that technology *to provide customer service*. For example, Plaintiffs allege that American's IVR software is "integrated . . . into its customer support hotline," which American uses "to assist its customers and respond to customer questions, issues, and complaints." TAC ¶¶ 23-24. Plaintiffs characterize IVR as an "automated interactive customer software" that American utilizes "in an

---

[1] Plaintiffs derive this erroneous standard from *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017). That decision misquoted the syllabus in *Twombly* describing the *old* pleading standard that *Twombly* then overruled.

3

effort to better achieve customer service goals." TAC ¶¶ 2, 24. In other words, Plaintiffs themselves allege that IVR is integrated into American's provision of customer service. Thus, based on their own allegations, American's use of IVR "relates to" its provision of customer service, which is indisputably a covered service under the ADA.

Courts have repeatedly held that Plaintiffs' proposed crabbed characterization of the service at issue is wrong. For example, in the *JetBlue* case, the plaintiffs alleged that defendants violated state consumer protection statutes "by obtaining, maintaining, and manipulating class member's personal data that was received in direct violation of JetBlue's privacy policy." *In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005). In Plaintiffs' telling, that claim would not be related to an airline's services because it focused only on customer data and JetBlue's privacy policy, and (in Plaintiffs' words) "ha[d] nothing whatsoever to do with flights, airfares, or transportation." Opp. at 6. But that would "misconstrue the issue." *In re Jetblue*, 379 F. Supp. 2d at 316. The "claim fit[] squarely within the range of state law actions that the Supreme Court concluded . . . are expressly preempted by the ADA, because it represents a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales, both of which are" covered services. *Id.* at 315 (collecting cases).

Likewise in *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884 (2016), where the plaintiffs alleged that Delta's mobile application did not comply with California data privacy law. The service there was not "data privacy" or Delta's "privacy policy," or even Delta's "mobile app." Plaintiffs' claims were *related to* customer services because passengers could use the mobile app to book, cancel, or modify flights—just as passengers can do through American's customer service hotline. *Id.* at 901 & n.13. Or take *Pena v. British Airways, PLC*

4

*(UK)*, 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020). The plaintiff there expressly argued that his claims related "solely to the provision of a false privacy policy and only tenuously to the provision of any service; and that the provision of a privacy policy is not 'reasonably necessary' to the provision of reservations or ticket sales." *Id.* at *4. The Court disagreed: the plaintiff's claim clearly "relate[d] to [the carrier's] provision of reservation and ticket sales via its website and mobile application, and [were] therefore services as defined under the ADA." *Id.* at *4-5.

So too here. IVR technology clearly has a "connection with" customer service—according to Plaintiffs' complaint, American uses it to provide better customer service—and thus Plaintiffs' claims are preempted, as courts confronted with similar claims under privacy statutes uniformly hold. *Morales*, 504 U.S. at 384; MTD at 6-7.

For the same reason, Plaintiffs' argument that "IVR technology" is "not a *bargained-for* aspect[] of airline operations over which carriers compete," Opp. at 6 (quotations omitted), misses the mark. Despite Plaintiffs' self-serving proclamation in their opposition, what is at issue here is not simply IVR technology, it is customer service as provided through American's customer service hotline using that technology—as Plaintiffs' own allegations establish. And carriers of course compete over customer service, which is why courts regularly hold that claims related to customer service are preempted. *See* MTD at 5-6 (collecting cases); *see also Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) (claims related to "ticketing" procedures preempted).[2]

---

[2] *Donoff v. Delta Air Lines, Inc.*, 2019 WL 9091763 (S.D. Fla. July 9, 2019), relied on by Plaintiffs, is inapposite. There, the court held that Delta's marketing of third-party travel insurance was not related to an airline's service under the ADA. But a claim seeking to regulate how an airline markets third-party travel insurance is vastly different than seeking to regulate how an airline interacts with its customers on a customer-service hotline where customers book, cancel, or modify flights. *See, e.g.*, *Harris*, 247 Cal. App. 4th at 884; *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *8 (C.D. Cal. Sept. 18, 2018).

5

Plaintiffs fare no better in arguing that their claims do not implicate a covered ADA service because American "does not even alert callers that it collects their biometrics in the first place." Opp. at 6. Again, Plaintiffs' own allegations confirm that the relevant service here is customer service as provided through American's customer service hotline, not IVR technology in a vacuum decoupled from their own allegations. See TAC ¶¶ 2, 24, 34.

Moreover, and regardless, the case law is abundantly clear that state law claims regulating an airlines' disclosures to its customers are preempted. See, e.g., Pica, 2018 WL 5861362, at *8 ("Plaintiffs alleg[ations] that Defendant breached its state-imposed standard of care because Defendant, . . . failed to informed Plaintiffs in a timely manner," of a data leak of personally identifiable information "directly relate to Defendant's primary services," and were preempted); see also Hodges v. Delta Air Lines, Inc., 2010 WL 5463832, at *5–6 (W.D. Wash. Dec. 29, 2010); MTD at 7-8. Plaintiffs' claims are preempted because they would require American to provide notices and collect waivers while providing customer service. Plaintiffs cannot avoid preemption by arguing that American failed to make those preempted disclosures. Cf. Travel All Over The World, 73 F.3d at 1434 ("The crucial inquiry is the underlying nature of the actions taken, rather than the manner in which they are accomplished.").

Plaintiffs further argue their BIPA claims are not preempted because "there is no allegation in the Complaint that Plaintiff Kislov called Defendant's hotline regarding a customer service request." Opp. at 6-7. Plaintiffs never explain why that would matter—and it does not. The underlying reason a consumer might utilize American's customer service hotline has nothing to do with whether their claims relate to customer service under the ADA. If Plaintiffs prevailed on their BIPA claims, American would have to change the way it provides customer services to *any* Illinois citizen that calls its customer service hotline—regardless of the reason. See, e.g.,

6

*Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 454 (1st Cir. 2014) ("[T]he relevant inquiry is whether enforcement of the plaintiff's claims would impose some obligation on an airline-defendant with respect to conduct that, when properly undertaken, is a service."). And while the reason for the call does not matter, it defies common sense to suggest that someone would call American's customer service hotline for a reason unrelated to seeking customer service.

In short, Plaintiffs' contention that the only service here is "IVR technology" simply reads the words "related to" out of the ADA entirely. And while it is of course wrong to read any language out of any statute, it is particularly improper here given the Supreme Court's admonition that the "ordinary meaning" of the ADA's "related to" language has a "broad scope" and "expansive sweep." *Morales*, 504 U.S. at 383; *Travel All Over the World, Inc.*, 73 F.3d at 1430 (noting ADA "express[es] a broad preemptive purpose").

   **B.**  **Plaintiffs' Claims Would Have a Significant Impact on American's Customer Service**

Plaintiffs allege that American adopted "integrated [IVR] software into its customer support hotline . . . in an effort to better achieve customer service goals." TAC ¶ 24; *see also id.* ¶ 32. Yet Plaintiffs now argue that their BIPA claims are not preempted because complying with BIPA would not have a "significant economic effect" on American's services. Opp. at 7-9. Nonsense. As Plaintiffs themselves recognize, claims that "would force [a carrier] to alter its services" are preempted under the ADA. Opp. at 7. And based on their own allegations and the plain language of BIPA, Plaintiffs' claims would require American to alter the manner in which it provides customer service.

Plaintiffs' claim under 740 ILCS 14/15(b), for example, would require American to discontinue the (alleged) use of IVR technology as part of its customer service platform until it provides written notice to any caller from Illinois that American (allegedly) collects biometric

7

data and then secures a written waiver. Opp. at 8 (stating that American would have to "[d]isable the biometric component of its IVR technology except with respect to individuals to whom Defendant has provided written disclosures"). Imagine how that would work in real life. A customer would call American's hotline seeking service. American would somehow have to determine whether that customer was an Illinois resident and if so, whether that customer had previously issued a waiver. If he or she had not, American would have to discontinue the call, mail or email the customer the required notice, and wait for the customer to return a written waiver, before it could enable the IVR technology. For customers who declined the waiver, American could not use a technology that Plaintiffs say American implemented "to better achieve customer service goals." TAC ¶ 24; *see, e.g.*, *In re Jetblue*, 379 F. Supp. 2d at 316 ("attempt to regulate the representations and commitments that JetBlue makes in connection with reservations and ticket sales directly affects the airline's provision of those services").

The same is true of Plaintiffs' claim under 740 ILCS 14/15(d), which would prohibit American from disclosing biometric information to third-parties that store the information for American without a written waiver. Requiring a waiver before American could use its IVR software would significantly impact American's provision of customer services, as just explained. And courts routinely find similar data-management claims preempted because "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers." *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005); MTD at 7-8.

Indeed, Plaintiffs ignore altogether the patchwork of state and local laws that an airline would be forced to comply with if such state privacy laws were not preempted. If Plaintiffs'

8

claims were viable, then *every* state or locality could regulate American's customer service through privacy laws. An Illinois caller would need to get the Illinois disclosure and return the Illinois waiver. A California caller would need to get the California disclosure and return the California waiver. *See, e.g.*, *Harris*, 247 Cal. App. 4th at 903. And so on. That is precisely what Congress meant to preempt. As the Supreme Court explained in the context of interstate trucking, "[t]o allow [one state] to insist that the carriers provide a special checking system would allow other States to do the same. And to interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations," which is simply "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 375 (2008); *see, e.g.*, *Harris*, 247 Cal. App. 4th at 903 (applying same reasoning under ADA).[3]

Plaintiffs ask this Court to ignore these impacts based on a misreading of the case law. According to Plaintiffs, their claims are not preempted because (they say) BIPA would not have a "significant economic effect" on American's customer services. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996). Plaintiffs read this language to mean that ADA preemption applies only where state law "would impose [significant] *economic costs*" on a carrier." Opp. at 8-9 (emphasis added). That is an incorrect reading of Supreme Court and Seventh Circuit precedent, as explained below. But Plaintiffs' manufactured dispute about the relevant standard is academic because it is clear from their

---

[3] *Rowe* involved preemption under the Federal Aviation Administration Aviation Act ("FAAAA"). Because the FAAAA and ADA share the same "related to" language, courts apply "the shared language of the two statutes identically." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1051 (7th Cir. 2016).

complaint that Plaintiffs' BIPA claims would impose significant economic costs—and have a significant economic effect—on American's customer services for the reasons just explained: American would have to discontinue the use of a technology that Plaintiffs allege American adopted to make customer services more efficient unless and until it provides written notice to, and collects a written waiver from, every Illinois resident who calls into its customer-service hotline. *See* TAC ¶¶ 24-32.

That said, neither the Seventh Circuit nor the Supreme Court has ever required an airline to prove that state law would impose significant compliance costs as a prerequisite to preemption. *See, e.g.*, *Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 96 (1st Cir. 2013) (holding ADA "preempts laws regulating the operations of airlines, whether at high cost or low"); *see also Delta Air Lines, Inc. v. N.Y. City Dep't of Consumer Affairs*, 2021 WL 4582138, at *11 (E.D.N.Y. Sept. 30, 2021) (what matters is "the directness of the impact, or the centrality of the impact to a service, regardless of the impact level").

Start with the Supreme Court. In *Morales*, and then again in *Rowe*, the Supreme Court held a state law is "related to" a carrier's prices, routes, or services, where it has a "significant impact." *Morales*, 504 U.S. at 390; *Rowe*, 552 U.S. at 375. Indeed, *Rowe* expressly held that the FAAAA's identical "related to" preemption clause was satisfied even where the state "regulation will impose no significant additional costs upon carriers." 552 U.S. at 373. That ends the argument. So does *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014). There, the Court found preempted a state law claim that sought reinstatement of a single passenger into a carrier's frequent flier program. *Id.* at 284-85. If reinstatement of a single passenger into a frequent flier program has a sufficient nexus to prices, routes, and services, then it follows *a fortiori* that a claim requiring an airline to alter the manner in which it provides customer service to all Illinois

10

residents who call its customer service hotline has a sufficient nexus too. *Cf. Morales*, 504 U.S. at 390 (finding state law preempted "the obligations imposed by the [law] would have a significant impact upon the airlines' ability to market their product").

Seventh Circuit case law does not conflict with Supreme Court precedent, as Plaintiffs now suggest. To start, *Travel All Over The World* was applying *Morales*, so it obviously was not adopting some new and heightened "economic costs" standard. And *Travel All Over The World* held that the plaintiffs' intentional tort claims *would be preempted*, without any mention of the "economic costs" of compliance with state law. 73 F.3d at 1434-35. In fact, the phrase "economic costs" appear nowhere in *Travel All Over The World* at all.

Nor does it appear in Seventh Circuit cases after *Travel Over The World*. On the contrary, the Seventh Circuit has (correctly) read *Travel All Over The World* to be consistent with Supreme Court precedent. *Nationwide Freight Sys., Inc. v. Ill. Com. Comm'n*, 784 F.3d 367, 376 (7th Cir. 2015) (noting "[w]e can find nothing in the Supreme Court's cases that is inconsistent with our holding [in *Travel All Over the World*]"). In the Seventh Circuit, claims are preempted to the extent "they would have a significant effect on air carriers' rates, routes or services—as these claims . . . assuredly do." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 611 (7th Cir. 2000); *see also Pro. Towing & Recovery Operators of Illinois v. Box*, 2008 WL 5211192, at *8 (N.D. Ill. Dec. 11, 2008) ("[I]f the effect of the regulation would be that carriers would have to offer different services than what the market would otherwise dictate, the law ha[s] a sufficient effect on carrier services for preemption to apply."); *Georgia Nut Co. v. C.H. Robinson Co.*, 2017 WL 4864857, at *1 (N.D. Ill. Oct. 26, 2017) (holding preempted "state-law negligence claims relating to these services [that] would have a significant effect on these services").

11

There is simply nothing to Plaintiffs' "economic costs" argument, but the Court does not need to address it in any event because Plaintiffs lose even under their own erroneous standard. *Supra* at 9-10.

The remainder of Plaintiffs' argument is equally unpersuasive. They cite three cases that are easily distinguishable under controlling Seventh Circuit precedent: None involved the use of *customer* data or the provision of *customer* service. As the Seventh Circuit has explained, there is a critical "distinction for purposes of . . . preemption between generally applicable state laws that affect the carrier's relationship with its customers and those that affect the carrier's relationship with its workforce. Laws that affect the way a carrier interacts with its customers fall squarely within the scope of . . . preemption." *Costello*, 810 F.3d at 1054. In fact, two of the three cases cited by Plaintiffs expressly recognize this distinction. In both *Abudayyeh v. Envoy Air, Inc.* and *Nseumen v. DAL Global Services, Inc.*, the courts found that BIPA claims brought by *employees* were not preempted and noted that case law finding preemption "all relate to customers' personal information [and] the airlines' reservations and ticket sales services"—which is exactly the case here. *Abudayyeh*, 2021 WL 336173, at *2 (N.D. Ill. Aug. 3, 2021); *see also Nseumen*, 2021 WL 4728707, at *1 (N.D. Ill. Oct. 11, 2021) (noting "inapt" "comparison to cases in which privacy-based claims involving *customers'* information were dismissed"). The other case, *Rogers v. BNSF Railway Co.*, 2019 WL 5635180, at *3 (N.D. Ill. Oct. 31, 2019), likewise involved a worker in the distribution supply chain, not customers, and thus found an insufficient nexus to the provision of services.

Finally, Plaintiffs suggest that ADA preemption is "inappropriate for determination at the motion to dismiss stage" because there are "factual issues" about the degree to which state regulation "would impose economic costs" on the carrier. Opp. at 8-9. But there is no

12

"economic costs" requirement. *Supra* at 10-12. And is well established that ADA preemption can, and should, be decided on the pleadings, as the Supreme Court and Seventh Circuit have regularly held. *See Ginsberg*, 572 U.S. at 273 (affirming dismissal of claims as preempted by ADA at the pleading stage); *Mesa Airlines, Inc.*, 219 F.3d at 607 (affirming dismissal); MTD at 6-7 (citing extensive case law dismissing privacy claims under ADA). This is especially true here, where Plaintiffs' own allegations and opposition brief when considered with BIPA's requirements plainly establish that American would be required to change the way it interacts with its customers and potentially subject American to a patchwork of varying laws.

Plaintiffs cite a sole case where ADA preemption was not resolved at the dismissal stage. But that case only exemplifies why dismissal is warranted here. The analysis cited by Plaintiffs concerned a motion for interlocutory review under 28 U.S.C. § 1292(b), and anyway, the case involved "an issue of first impression as to ADA preemption, not just in this circuit, but throughout the entire court system." *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017). This case, by contrast, involves an attempt to regulate American's customer services and collection and management of customer information. Numerous courts have considered whether state-law privacy claims seeking to regulate the use of customer information as part of customers services are preempted, and have dismissed such claims because they are preempted by the ADA as a matter of law. *See* MTD 6-7. The abundant case law on this issue all conclusively demonstrates that Plaintiffs' TAC should be dismissed under Rule 12(b)(6).

## CONCLUSION

For these reasons, Plaintiffs' TAC should be dismissed because Plaintiffs' claims are preempted by the ADA.

Dated: November 12, 2021                       Respectfully submitted,

                                                                By: /s/Mark W. Robertson

Mark W. Robertson
(*admitted pro hac vice*)
Sloane Ackerman
(*admitted pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
Email: mrobertson@omm.com
       sackerman@omm.com

Paul E. Bateman
LITTLER MENDELSON P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
Telephone: (312) 372-5520
Facsimile: (312) 372-7880
Email: PBateman@littler.com

*Attorneys for Defendant American Airlines, Inc.*

14

## CERTIFICATE OF SERVICE

      The undersigned certifies that, on November 12, 2021, pursuant to Fed. R. Civ. P. 5 and LR 5.5, a true and correct copy of the foregoing American Airlines, Inc.'s Reply in Support of its Rule 12(b)(6) Motion to Dismiss was filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the email addresses on file with the court.

      /s/Mark W. Robertson
      Mark W. Robertson